582 A.2d 68

**GOODWIN VOLKSWAGON, INC., Petitioner,**

v.

**COMMONWEALTH of Pennsylvania,
Respondent (Two Cases).**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 1990.

Decided Oct. 18, 1990.

496

Joseph A. Lakowski, Joseph A. Lakowski & Associates, Pittston, for petitioner.

Clinton G. Smith, Jr., Deputy Atty. Gen., Office of Atty. Gen., Tax Litigation Section, with him, Ernest D. Preate, Jr., Atty. Gen., Harrisburg, for respondent.

Before COLINS and PELLEGRINI, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Goodwin Volkswagon, Inc. (Petitioner), an automobile dealership, challenges orders of the Board of Finance and Revenue (Board) which modified or sustained decisions of the Board of Appeals pursuant to two assessments issued by the Commonwealth of Pennsylvania, Department of Revenue (Commonwealth) for the payment of use tax accruing during the audit periods February 1, 1980 through April 30, 1983 (No. 3061 C.D.1984), and January 1, 1984 through September 30, 1986 (No. 521 C.D.1988). These appeals have been consolidated for our consideration. We affirm.

We note that "[a]ppeals to this Court from the Board are de novo." *Bruce & Merrilees Electric Co. v. Commonwealth of Pennsylvania,* 109 Pa.Commonwealth Ct. 101, 104, 530 A.2d 994, 995 (1987). The Board does not certify a record to this Court and pursuant to Pa.R.A.P. 1571(f), the parties are to "take appropriate steps to prepare and file a stipulation of such facts as may be agreed to and to identify the issues of fact, if any, which remain to be tried."

Here, Petitioner filed a praecipe for evidentiary hearing in both cases. This Court held the hearing on March 15, 1990, and pursuant thereto, required both parties to file their proposed findings of fact no later than April 13, 1990. Because only the Commonwealth complied, this Court adopted the Commonwealth's proposed findings of fact as our own in an April 24, 1990 order. Below, we set forth separately the pertinent findings of fact for each case:

## FINDINGS OF FACT

### (No. 3061 C.D.1984)

1. Petitioner is a Pennsylvania corporation engaged in the business of selling and servicing new and used automobiles and trucks.

2. The Commonwealth conducted an audit of Petitioner's books and records for the period of February 1, 1980 through April 30, 1983 and issued the following assessments (Nos. AM-77405 and AM-77406):

| | |
|---|---|
| Sales Tax | 837.32 |
| Use Tax | 10,716.43 |
| Interest * | 2,228.69 |
| Penalty | 577.76 |
| TOTAL | 14,360.20 |

\* Interest to date of assessment.

3. As a result of Petitioner's October 6, 1983 petition for reassessment, the Board of Appeals reduced the assessments on March 16, 1984 and reassessed the Petitioner's account as follows:

| | |
|---|---|
| Sales Tax | 8.32 |
| Use Tax | 10,716.43 |
| TOTAL * | 10,724.75 |

\* Plus appropriate interest and penalties.

4. The Board of Finance and Revenue sustained the decision of the Board of Appeals in a September 18, 1984 decision and order.

5. Petitioner filed a timely petition for review with this Court, which was docketed at No. 3061 C.D.1984.

6. Petitioner remitted no use tax to the Department of Revenue (Department) during the audit period.

7. Petitioner had a demonstrator account number 6106 during the audit assessment.

8. Petitioner failed to keep records of vehicles that were used as demonstrators.

9. Petitioner failed to keep records of the use of specific vehicles made by its officers, their families, employees or customers.

10. Petitioner lacked records to reflect which vehicles were placed in the demonstrator account or how long a vehicle had been in or stayed in the account.

11. Petitioner used the internal repair order journal (journal) to reflect the charges for all pre-sale work performed on all vehicles, whether or not used for demonstrator purposes.

12. Petitioner did not use the journal for vehicles which had been sold to customers.

13. Auditor's Exhibit "A," attached to the audit narrative report, is a sample of repair orders reflecting vehicles which the auditor had determined were placed to a taxable use.

14. Petitioner did not submit any notice to the Department that it intended to use its vehicle inventory for demonstration purposes or other taxable uses and produced no evidence to establish that it affirmatively elected to report tax to the Commonwealth pursuant to the alternate imposition of tax provisions available to automobile dealers.

15. As per the auditor's affidavit, the total tax due on the use of the vehicles amounts to $36,453.72 plus appropriate interest and penalties, due to Petitioner's failure to elect under the alternate imposition of tax provisions.

16. Petitioner, on its Pennsylvania Corporate Tax Returns for 1980, 1981, 1982 and 1983, reported company car and demonstrator expenses of $21,745.00; $24,761.00; $17,130.00; and $13,236.00, respectively.

17. Petitioner, on its Pennsylvania Corporate Tax Returns for 1980, 1981, 1982 and 1983, reported income from rental of vehicles in the amounts of $22,218.00; $19,175.00; $25,776.00, and $17,185.00, respectively and title and tags in the amounts of $8,731.00; $5,655.00; $5,314.00 and $21,297.00, respectively.

18. Petitioner, on its Pennsylvania Corporate Tax Returns for 1980, 1981, and 1982, reported depreciation on rental vehicles in the amounts of $3,407.00; $11,289.00; and $7,565.00, respectively.

19. Petitioner, on its Pennsylvania Corporate Tax Return for 1983, reported depreciation on leasing vehicles, rental vehicles and company vehicles in the amount of $42,368.00.

20. On May 10, 1989, Petitioner was notified pursuant to Pa.R.A.P. 1571(e) that the Commonwealth intended to seek an increase in the amount of the tax assessed and to raise the question of whether Petitioner was underassessed on the taxable use of motor vehicles because the assessments were calculated allowing the statutory fair rental value election which Petitioner had not demonstrated it made.

21. Joint Exhibit # 2 reflects that Petitioner was purchasing vehicles with no mileage recorded on each respective odometer and that Petitioner was selling these vehicles after their date of purchase with substantial mileage recorded on the odometer of each vehicle ranging from 46 miles to 14,132 miles.

22. The Petitioner's salespersons each had two dealer vehicle license plates (tags) assigned to them in order to allow customers overnight or over-the-weekend trials of vehicles.

23. Salespersons employed by the corporation were from time to time for training purposes allowed to use vehicles in inventory for a day or two at a time in order to familiarize themselves with the vehicle.

24. Petitioner had available "house tryout cars," one for each model sold, in order to allow customers to test drive vehicles outside the possession, custody or control of the corporation or its employees.

25. Petitioner would use its books and records to reflect the removal of a vehicle from new car inventory and into its demonstrator account where it would be recognized by the supplier as sold and entitle Petitioner to obtain larger inventory from its suppliers and a higher new vehicle allocation.

26. Petitioner would also remove vehicles from its new vehicle inventory account and reflect their cost in the dem-

onstrator account where it would be recognized by the supplier as sold in order to achieve well in sales contests sponsored by its suppliers or to take advantage of suppliers' offers of floor plan assistance directly generating additional income to the corporation.

27. Petitioner's chart of accounts and accounting system recorded as demonstrator vehicles those automobiles used by this Petitioner for purposes including test drives, overnight or over-the-weekend trials, company vehicles, management-assigned cars, house tryout cars and vehicles used by the president of Petitioner corporation and his family.

28. Petitioner admitted company use of vehicles during the audit period.

## FINDINGS OF FACT
### (No. 521 C.D.1988)

1. Finding of Fact No. 1 for No. 3061 C.D.1984 is incorporated herein and made a part hereof.

2. The Commonwealth conducted an audit of Petitioner's books and records for the period of January 1, 1984 through September 30, 1986 and issued the following assessment (No. A-70605):

| | |
|---|---|
| Sales Tax | 12.00 |
| Use Tax | 14,064.39 |
| Interest * | 2,592.20 |
| Penalty | 703.83 |
| TOTAL | 17,372.42 |

* Interest to March 8, 1987

3. Even though Petitioner filed an April 9, 1987 petition for reassessment, the Board of Appeals sustained the assessment in its entirety in a July 28, 1987 decision and order.

4. The Board of Finance and Revenue sustained the decision of the Board of Appeals in a January 19, 1988 decision and order.

5. Petitioner filed a timely petition for review with this Court, which was docketed at 521 C.D.1988.

6. Petitioner remitted no use tax to the Department during the audit period.

7. As a result of the findings of the Department Audit covering the period February 1, 1980 through April 30, 1983, Petitioner discontinued the use of the "demonstrator account" in its accounting records.

8. Petitioner continued to use vehicles as it had in the prior audit period including use of vehicles for test drives, overnight or over-the-weekend customer trials, company vehicles, management-assigned cars, house tryout cars, vehicles for the personal use of the president and members of his family, and as training aids for sales personnel.

9. The auditor's source for the conclusion that there were taxable uses of vehicles were the repair orders, mileage on vehicles, internal repair orders indicating that the vehicles were demonstrators, the annotated copy of the list of dealer license plates assigned to the Petitioner reflecting the person to whom the "tag" was assigned and the nature of the repair orders examined such as the replacement of tires, oil filter, or inspection on new vehicle inventory.

10. The cost of each vehicle reflected as a demonstrator on other records or which the auditor determined was a demonstrator was based on the particular assessed vehicle's inventory card. As originally assessed, the auditor calculated the tax using the statutory fair rental value which he later learned was not elected by this Petitioner and the auditor then, under affidavit, recalculated the tax due by applying the tax rate to the previously reflected cost of each assessed vehicle.

11. Petitioner does not use the internal repair order journal for vehicles which have been sold to customers, but does use said journal to reflect the charges for all pre-sale work performed on all vehicles no matter if used for demonstrator purposes or not.

12. Petitioner did not submit any notice to the Department that it intended to use its vehicle inventory for demonstration purposes or other taxable uses and produced no

evidence to establish that it affirmatively elected to report tax to the Commonwealth pursuant to the alternate imposition of tax provisions available to automobile dealers.

13. As per the auditor's affidavit, the total tax due on the use of the vehicles amounts to $41,316.54 plus appropriate interest and penalties, due to Petitioner's failure to elect.

14. On May 10, 1989, Petitioner was notified pursuant to Pa.R.A.P. 1571(e) that the Commonwealth intended to seek an increase in the amount of the tax assessed and to raise the question of whether Petitioner was underassessed on the taxable use of motor vehicles because the assessments were calculated allowing the statutory fair rental value election which Petitioner had not demonstrated it made.

15. Joint Exhibit # 2 reflects, with one exception, that Petitioner was purchasing vehicles with no mileage recorded on each respective odometer and that in all cases of vehicles referenced in the audit, Petitioner was selling these vehicles after their date of purchase with substantial mileage or additional mileage recorded on the odometer of each vehicle ranging from 46 miles to more than 14,132 miles.

16. The Petitioner's salespersons each had two tags assigned to them in order to allow customers overnight or over-the-weekend trials of vehicles.

17. Salespersons employed by the corporation were from time to time for training purposes allowed to use vehicles in inventory for a day or two at a time in order to familiarize themselves with the vehicle.

18. Petitioner had available "house tryout cars," one for each model sold, in order to allow customers to test drive vehicles outside the possession, custody or control of the corporation or its employees.

19. Petitioner would use its records to reflect the removal of a vehicle from new car inventory and into demonstrator service where it would be recognized by the supplier as sold and entitle Petitioner to obtain larger inventory from its suppliers and a higher new vehicle allocation.

20. Petitioner's inventory or stock card system recorded as demonstrator vehicles those specific automobiles used by this Petitioner for purposes including test drives, overnight or over-the-weekend trials, company vehicles, management-assigned cars, house tryout cars and vehicles used by the president and his family.

21. The Petitioner's controller indicated at the time of the audit that an internal repair order listing "clean for demo" or "demo expense" meant that the employee had used or been assigned the car.

22. Petitioner's current garage liability policy reflects stated insurance coverage for "demonstrator" vehicles.

23. Petitioner admitted company use of vehicles during the audit period.

## DISCUSSION

There are three issues before us. The first is whether Petitioner's use of vehicles reflected in either the designated "demonstrator vehicle" account or in Petitioner's books and records as "demonstrators" constituted a taxable use of vehicles. The second is whether the Commonwealth had authority to raise the assessments after the Department had issued them and Petitioner had appealed them. The third is whether Petitioner established that it acted in good faith without negligence and with no intent to defraud the Commonwealth, so as to merit penalty abatement.

In regards to the first issue, Petitioner's liability, we note that the statutory basis for imposition of use tax is found in Section 202(b) of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7202(b). In pertinent part, it reads as follows: "There is hereby imposed upon the use ... of tangible personal property purchased at retail ... a tax of six per cent of the purchase price."

Section 201(*o*)(1) of the Code, 72 P.S. § 7201(*o*)(1), contains the definition of "use." It reads as follows: "(1) The exercise of any right or power incidental to the ownership,

custody or possession of tangible personal property and shall include, but not be limited to transportation, storage or consumption."

■ Additionally, we note that the taxpayer has the burden of proof when challenging assessments. Section 236, 72 P.S. § 7236. In fact, the General Assembly requires a taxpayer to "keep such records as the department deems sufficient to show whether or not such person is liable to pay or collect tax under this article." Section 271, 72 P.S. § 7271.

Here, Petitioner (1) did not claim that any of its records proved that there was no taxable use of the vehicles reflected in either the "demonstrator vehicle" account, No. 3061 C.D.1984, or in its records as "demonstrators", No. 521 C.D.1988; (2) offered no evidence as to why the vehicles in either the "demonstrator vehicle" account or those reflected in its records as "demonstrators," needed the repairs referred to in its journal or why the vehicles accumulated mileage; and (3) maintained no records to identify which vehicles were included in either the "demonstrator vehicle" account or as "demonstrators," or how long the drivers made use of any of those vehicles.

■ Because Petitioner withdrew certain vehicles from its inventory, offered no evidence as to why its use of those vehicles did not constitute a taxable use, and evidence exists that Petitioner used the vehicles at issue in a taxable manner under Section 201($o$)(1), we find liability here in both cases.

The second issue, concerning the Commonwealth's authority to raise the assessments, is less clear and somewhat troublesome, particularly since we have found no case specifically addressing that issue. In No. 3061 C.D.1984, the original assessment was $10,724.75 plus appropriate interest and penalties. As per the auditor's affidavit, based on Petitioner's failure to elect, the Commonwealth wishes to raise the assessment to $36,453.72 plus appropriate interest and penalties. There is a similar disparity in No. 521

C.D.1988, where the original assessment was $17,372.42 plus appropriate interest and penalties, with the new assessment being $41,316.54 plus appropriate interest and penalties.

The statutory basis for the Commonwealth's attempt to raise the assessments is Petitioner's failure to make the fair rental tax election under Section 205(a), 72 P.S. § 7205(a). As per that section:

(a) If any person actively and principally engaged in the business of selling new or used motor vehicles, trailers or semi-trailers, and registered with the department in the "dealer's class," *acquires a motor vehicle,* trailer or semi-trailer *for the purpose of resale, and prior to such resale, uses the motor vehicle,* trailer or semi-trailer *for a taxable use under this act* during a period not exceeding one year from the date of acquisition to the date of resale, *such person may,* upon notice to the department within ten days of the commencement of such use, *elect to pay a tax equal to six per cent of the fair rental value of the motor vehicle,* trailer or semi-trailer during such use. Should such motor vehicle, trailer or semi-trailer be used for a taxable use after a period of one year, the taxpayer shall be liable for a tax on the fair market value of such motor vehicle, trailer or semi-trailer at the time of acquisition, but shall be allowed a credit equal to the tax paid pursuant to the election provided for in this section. *This section shall not apply to the use of a vehicle as a wrecker, parts truck, delivery truck or courtesy car.* (Emphasis added.)

The Commonwealth cites Pa.R.A.P. 1571(e) as authority for raising the assessments. As per that rule:

(e) Answer. An answer may not be filed to a petition for review of a determination of the Board of Finance and Revenue. The Commonwealth may raise any question on review, although no cross petition for review has been filed by it, and may introduce any facts in support of its position if 20 days written notice is given to the petitioner

prior to trial of the intention of raising such new questions or presenting new facts.

Even though there is no caselaw regarding Pa.R.A.P. 1571(e), there are cases decided pursuant to the previously applicable statutory provision,[1] now totally abrogated by Rule 1571(e). The formerly applicable section, Section 1104 of The Fiscal Code, reads as follows:

> The Commonwealth may raise any question on appeal, although no appeal has been filed by it, and may introduce any facts in support of its settlement or in correction thereof, provided notice of twenty (20) days is given the appellant prior to trial of the intention of raising such new questions or presenting new facts.

In a 1966 use tax case decided pursuant to Section 1104 of The Fiscal Code, our Supreme Court stated that the Commonwealth could not raise issues extraneous to the one forming the basis of the case. *Commonwealth v. Central Pennsylvania Quarry Stripping and Construction Co., Inc.,* 422 Pa. 573, 222 A.2d 728 (1966). Therein, the Commonwealth was seeking to sustain its assessment by having diesel fuel be included under categories of tangible personal property additional to the one originally chosen. The court held that "[t]he question presented is whether diesel fuel is tangible personal property under the Act, and the Commonwealth is entitled to present all arguments in support of its position." *Id.,* 422 Pa. at 580, 222 A.2d at 732.

■ Here, the additional issue raised is the Commonwealth's intention of raising the assessments due to Petitioner's failure to elect under Section 205(a). In *Central,* the Commonwealth sought to enlarge the number of categories under which diesel fuel could be taxed, not to raise directly the amount of the assessment. Since the failure to elect seems extraneous to the main issue of liability, we hold that the Commonwealth may not raise the assessments on the basis of Pa.R.A.P. 1571(e).

1. Section 1104 of The Fiscal Code, Act of April 9, 1929, P.L. 343, formerly 72 P.S. § 1104, repealed by the Act of December 20, 1982, P.L. 1409.

Petitioner argues that the Commonwealth has no right to raise the assessments now since such intent was not included in the basis for assessment. Under Section 232, 72 P.S. § 7232, "[t]he department by registered mail shall supply the taxpayer with a statement setting forth in reasonable detail the basis of the assessment within thirty days after receipt of the taxpayer's notice of intention to file a petition for reassessment."

In a 1969 Dauphin County sales and use tax case, the Commonwealth was thirty-four days late in sending taxpayer the basis for its assessment under Section 232's predecessor.[2] That court held that untimeliness was a technical deficiency and made the following statement:

> The basis for assessment which the statute requires be given to a taxpayer who has evidenced his intent to contest the assessment is but a bill of particulars to enable the taxpayer to be more fully informed and thereby better prepared to advance his previously evidenced intent to contest the assessment. The right afforded a taxpayer by this provision of Section 542 is that of receiving the basis of assessment and the benefit is essentially for this purpose. *This right and the benefit to be derived therefrom were not materially impaired by its untimely deliverance; and the late delivery of the basis of assessment in no way impaired appellants' fundamental right to administrative and ultimate judicial review of the tax liability asserted by the taxing authority.*

*Commonwealth v. Lafferty,* 90 Dauph. 264, 268–69 (C.P.Pa. 1969) (emphasis added).

■ Here, the issue is whether the Commonwealth's notification to Petitioner that it intended to raise the assessments was so untimely as to materially impair Petitioner's fundamental right, as described in the above-quoted passage. Because the Commonwealth did not notify Petitioner

2. Section 542 of the Selective Sales and Use Tax Act, Act of March 6, 1956, P.L. 1228, *as amended,* formerly 72 P.S. § 3403–542, repealed by Act of March 4, 1971, P.L. 47.

of its failure to elect until years after sending the basis for assessment and that issue seems to be extraneous to liability, we find that the Commonwealth's attempt to amend its basis for assessment under Section 205 is so untimely as to materially impair Petitioner's fundamental right to review.

■ In regards to the third issue, penalty abatement, the applicable section of the Code reads as follows:

Upon the filing of a petition for reassessment or a petition for refund as provided under this article by a taxpayer, additions or penalties imposed upon such taxpayer by this act may be waived or abated, in whole or in part, where the petitioner has established that he has acted in good faith, without negligence and with no intent to defraud.

Section 269, 72 P.S. § 7269. Again, the burden of proof is on the taxpayer. Section 236.

■ In another use tax assessment case, our Supreme Court upheld an assessment of penalties for a large, multistate construction contractor's failure "to keep records of appropriate thoroughness to aid in determining tax liabilities." *Ernest Renda Contracting v. Commonwealth*, 516 Pa. 325, 340, 532 A.2d 416, 423 (1987). Because there is ample evidence here that Petitioner failed to adequately maintain records as mandated by the Code, Petitioner has not upheld its burden of proving good faith, no negligence and no intent to defraud.

## CONCLUSIONS OF LAW

(No. 3061 C.D.1984)

1. Petitioner made a taxable use of vehicles when it used them during the audit period.

2. The Board properly sustained sales and use tax against Petitioner in the amount of $10,724.75, plus appropriate interest and penalties.

3. Petitioner failed to maintain adequate books and records to reflect the taxable use of vehicles and account for the appropriate use tax due on this property.

4. Petitioner failed to establish that it acted in good faith, without negligence and with no intent to defraud the Commonwealth.

## CONCLUSIONS OF LAW

### (No. 521 C.D.1988)

1. Conclusion of Law No. 1 of No. 3061 C.D.1984 is incorporated herein and made a part hereof.

2. The Board properly sustained sales and use tax against Petitioner in the amount of $14,076.39, plus appropriate interest and penalties.

3. Conclusion of Law No. 3 of No. 3061 C.D.1984 is incorporated herein and made a part hereof.

4. Petitioner attempted to conceal its use of vehicles in this audit period by removing the "demonstrator vehicle" account from its accounting records and failing to advise the auditor of the actual use made of specific vehicles, including company and personal vehicles.

5. Conclusion of Law No. 4 of No. 3061 C.D.1984 is incorporated herein and made a part hereof.

For these reasons, we affirm.

AND NOW, this 18th day of October, 1990, the order of the Board of Finance and Revenue in the above-captioned matter is hereby affirmed.

It is further ordered that unless Exceptions are filed within thirty (30) days from the date of this order, the Chief Clerk shall enter judgment in favor of the Commonwealth in the amount of $10,724.75 plus appropriate interest and penalties.

## ORDER

AND NOW, this 18th day of October, 1990, the order of the Board of Finance and Revenue in the above-captioned matter is hereby affirmed.

It is further ordered that unless Exceptions are filed within thirty (30) days from the date of this order, the Chief Clerk shall enter judgment in favor of the Commonwealth in the amount of $14,076.39 plus appropriate interest and penalties.