**CADBURY SCHWEPPES, INC., Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, Respondent (Two Cases).**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 7, 1998.

Decided Nov. 9, 1998.

E. Morgan Maxwell, III, Philadelphia, for petitioner.

Kevin A. Moury, Harrisburg, for respondent.

Before COLINS, President Judge, and DOYLE, SMITH, FRIEDMAN, KELLEY, FLAHERTY and LEADBETTER, JJ.

COLINS, President Judge.

Petitioner, Cadbury Schweppes, Inc., (Petitioner) filed exceptions to the order and opinion filed June 5, 1998 by this Court affirming the orders of the Board of Finance and Revenue and settling Petitioner's 1988 calendar year tax report. The exceptions present the same questions and issues addressed by this Court in the well-reasoned opinion authored by the Honorable Charles A. Lord, filed on June 5, 1998.

Accordingly, Petitioner's exceptions are overruled, and the opinion of the three-judge panel, a copy of which is attached hereto, is adopted as that of the Court en banc.

### ORDER

AND NOW, this 9th day of November, 1998, Petitioner's exceptions are overruled. The Chief Clerk is directed to enter judgment in favor of the Commonwealth of Pennsylvania.

LEADBETTER, J., dissents.

### ATTACHMENT

#### IN THE COMMONWEALTH COURT OF PENNSYLVANIA

CADBURY SCHWEPPES, INC.,
Petitioner

v.

COMMONWEALTH OF PENNSYLVANIA,
Respondent

No. 352 F.R. 1992

CADBURY SCHWEPPES, INC.,
Petitioner

v.

COMMONWEALTH OF PENNSYLVANIA,
Respondent

No. 353 F.R. 1992

Argued: May 7, 1998

BEFORE: HONORABLE DOYLE, Judge
   HONORABLE SMITH, Judge
   HONORABLE LORD, Senior Judge

*OPINION NOT REPORTED*

FILED: June 5, 1998

**MEMORANDUM OPINION BY**

**SENIOR JUDGE LORD**

Cadbury Schweppes (Cadbury), appeals two companion orders of the Board of Finance and Review (Board) assessing its Corporate Net Income Tax and Foreign Franchise Tax for the year ending December 31, 1988.

The following facts and issue have been stipulated to by both Cadbury and the Board. Cadbury is a corporation organized in 1982 under the laws of the State of Delaware. Cadbury is authorized to do business in the Commonwealth of Pennsylvania as a foreign corporation. Its principal office and commercial domicile is located in Connecticut.

Cadbury timely filed its 1988 Pennsylvania Corporate tax report, reporting a franchise tax due of $22,215.00 and a corporate tax due of $772,804.00. The Department of Revenue (Department) settled the 1988 calendar year tax report, increasing the franchise tax to $34,766.00 and the corporate net income tax to $2,649,894.00.

From these settlements, Cadbury filed timely administrative appeals to the Department, Board of Appeals and the Board, which appeals were denied. From these denials, Cadbury filed timely appeals to this Court. Subsequent to the filing of this appeal, Cadbury filed a report of change as a result of a federal income tax audit. The Department then issued a report of change resettlement in which Cadbury's 1988 corporate net income tax was increased to $2,750,894.00.

The sole issue for determination in this appeal involves the Department's inclusion of Cadbury's $85,903,270.00 gain from the sale of Dr. Pepper stock in 1988 book income for franchise tax purposes and in apportionable business income for corporate net income tax purposes.

Our scope of review of Board decisions is very broad; although cases from the Board are addressed to our appellate jurisdiction, we essentially function as a trial court. *Cooper v. Commonwealth*, 700 A.2d 553 (Pa. Cmwlth.1997). Because Cadbury is appealing a decision of the Board, it has the burden of proof. *Ernest Renda Contracting Co., Inc., v. Commonwealth*, 516 Pa. 325, 532 A.2d 416 (1987).

Business income is defined in the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6 *as amended*, 72 P.S. §§ 7101–10004 as follows:

"Business income" means income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations.

72 P.S. §7401(3)2.(a)(1)(A).

The Code further defines nonbusiness income as "... all income other than business income." 72 P.S. §7401(3)2.(a)(1)(D). While business income is subject to apportionment, nonbusiness income is allocated to the situs of the income producing property.

Cadbury in its brief argues that the gain derived from the sale of the Dr. Pepper stock should be classified as nonbusiness income. In doing so, Cadbury relies primarily on the Supreme Court's decision in *Commonwealth v. ACF Industries*, 441 Pa. 129, 271 A.2d 273 (1970). In *ACF Industries*, the Court ruled that the gain on a stock sale by a nondomiciliary corporation was not taxable in Pennsylvania. The Court wrote in *ACF Industries*:

"Moreover, it is the use of the stock itself which is critical. Absolutely nothing indicates that this asset, the stock, was used in any way which was related to or contributed to ACF's business in Pennsylvania. Because the facts indicate just the opposite

to be true, we can only conclude that this asset was unrelated to the exercise of ACF's Pennsylvania franchise and that the sale proceeds should be excluded from its income and apportionment fractions in computing ACF's corporate net income tax for the year ended April 30, 1962."

*Id.* at 281.

Cadbury seeks the same treatment of its sale of Dr. Pepper stock that was afforded to ACF Industries in the sale of its stock. However, Cadbury fails to provide the factual background that would allow for such treatment. The record before this Court in this matter provides no information as to when and why the Dr. Pepper stock was purchased by Cadbury, how the stock was used while it was held by Cadbury, the type and amount of any transactions between Cadbury and Dr. Pepper, or other relevant information.

Cadbury also cites *Allied–Signal, Inc. v. Director, Division of Taxation,* 504 U.S. 768, 112 S.Ct. 2251, 119 L.Ed.2d 533 (1992), as authority for the proposition that the gain from the sale of the Dr. Pepper stock should be excluded from apportionable business income under the constitutional theory of multiformity.[1] However, once again, the factual record does not exist that would allow for the application of *Allied–Signal, Inc.*

Additionally, Cadbury attempts to argue that the disposition of the Dr. Pepper stock qualifies as a sale and is thus accorded treatment as nonbusiness income. The Code defines sales as:

*all gross receipts of the taxpayer not allocated under this definition,* other than dividends received, interest on United States, state or political subdivision obligations *and gross receipts* heretofore or hereafter *received from the sale, redemption, maturity or exchange of securities, except those held by the taxpayer primarily for sale to*

*customers in the ordinary course of its trade or business.*

72 P.S. §7401(3)2.(a)(1)(E) (emphasis added).

The definition of sales itself defeats Cadbury's attempt to characterize the Dr. Pepper stock gain as nonbusiness income. Indeed, the first phrase of the sales definition states that sales are "all gross receipts of the taxpayer not allocated under this definition." *Id.* Hence, it is possible that a taxpayer could sell stock not in his ordinary course of business and still have the gain on the sale characterized as business income and be excluded from the sales factor. We therefore are not persuaded by Cadbury's attempt to classify the disposition of its Dr. Pepper stock as a sale.

Cadbury argues in the alternative that, if the gain is apportionable business income, then the proceeds must be added to the sales factor. However, this Court will not address this issue since, as previously noted, both Cadbury and the Commonwealth have stipulated that the only issue for determination in this appeal involves the appropriateness of the Department's inclusion of Cadbury's 1988 Dr. Pepper stock sale gain in apportionable stock sale income for corporate net income tax purposes and in book income for franchise tax valuation purposes.

Lastly, Cadbury requests an evidentiary hearing to establish a record from which this Court could rule that Cadbury's disposition of Dr. Pepper stock was nonbusiness income. In support of its request for an evidentiary hearing, Cadbury cites *General Asphalt Paving Co. of Philadelphia v. Commonwealth,* 86 Pa.Cmwlth. 106, 483 A.2d 1068 (1984), in which this Court held that the stipulation of facts by the Commonwealth and taxpayer was an insufficient basis for determination by this Court of whether paving material allegedly used by taxpayer in connection with construction, repair or maintenance of public utility facilities was covered by the utility exclusion from a use tax; this Court additionally held that it was necessary that fur-

---

1. The constitutional theory of multiformity holds that a State may not tax value earned outside its borders unless there is "some definite link, some minimum connection, between a state and the

person, property or transaction it seeks to tax." *See Miller Brothers Co. v. Maryland,* 347 U.S. 340, 74 S.Ct. 535, 98 L.Ed. 744 (1954).

ther facts be determined by stipulation of the parties or by an evidentiary hearing.

Cadbury's situation can be distinguished from that faced by the taxpayer in *General Asphalt* in that on January 15, 1998, this Court issued an order which rendered the record in this case closed. In our order, we cited the fact that Cadbury was allowed ample time to answer interrogatories and produce proposed stipulations of fact based on this Court's Orders of March 18, July 22, September 17, October 22, and November 25, 1997. Because Cadbury, which is the burdened party, failed to meet its burden of production despite ample opportunity to do so, we must rule against its request for an evidentiary hearing at this late date.

Accordingly, we will affirm the Board's order.

### ORDER

AND NOW, this *5th* day of *June*, 1998, the orders of the Board of Finance and Review, dated July 21, 1992, at Nos. 6248 and 6249 are hereby affirmed.