## Commonwealth v. The First National Bank of Scranton

*Frank A. Sinon,* Deputy Attorney General, and *Claude T. Reno,* Attorney General, for Commonwealth.

*M. Clyde Sheaffer* and *William M. Young,* for appellant.

WOODSIDE, J., September 21, 1942.—This case comes before us upon an appeal from a resettlement by the taxing officers on National bank shares for the year 1936.

Stipulations dispensing with trial by jury and as to facts were filed, and some testimony was taken.

We have found the facts in answer to requests which have been filed of record and repeat only so much of them for convenience as is necessary to our present discussion.

## Facts

1. The appellant is a National banking association located in the City of Scranton and during the year 1936 was engaged in the general banking business in said city.

2. Within the time provided by law defendant filed its 1936 shares tax report as required by the Act of July 15, 1897, P. L. 292, as amended, 72 PS §1931.

3. The settlement was made by the taxing officers in the sum of $93,081.54 at the rate of 8 mills on $11,-635,192, determined by adding the capital stock paid in, surplus, undivided profits, appreciation and reserves, less investments in shares of other National banks.

4. Upon resettlement, by deducting depreciation of loans and discounts, other real estate and bank building, the taxable value of the shares was reduced to $10,451,225, and the tax assessed at $83,609.80.

5. On December 31, 1936, the First National Bank of Scranton owned shares of stock of National banks, shares of stock of banks organized under the laws of the Commonwealth of Pennsylvania, shares of stock of Pennsylvania corporations, shares of stock of foreign corporations which paid or were liable to the Commonwealth of Pennsylvania for a franchise tax, obligations issued by the United States Government and bonds guaranteed by the United States Government.

6. On December 31, 1936, 1,010 shares of the First National Bank of Scranton were owned by charitable, religious, or educational institutions.

7. On December 31, 1936, shares of stock of the First National Bank of Scranton were owned by nonresidents of Pennsylvania and foreign corporations, by Pennsylvania State banks, by National banks operated in Pennsylvania, and by domestic corporations, in addition to those held by charitable, religious, and educational institutions.

8. All of the aforesaid shares of appellant, totalling 40,419, were taxed in the 1936 tax on shares settlement, and in the resettlement by the Secretary of Revenue and the Auditor General.

9. The amount of tax imposed on resettlement for 1936 was paid within 60 days from the date of the approval of the settlement by the Auditor General.

10. Defendant's tax as claimed due by the Commonwealth is $83,609.80, of which defendant admits liability for $28,878.23.

## Questions involved

1. Should the value of the securities issued by the United States Government, its agencies or instrumentalities, and the Federal Reserve Bank, be excluded from the assets of appellant before determining the taxable value of the shares?

2. Is 8 mills or 5 mills the correct rate of tax to be applied to National bank shares for the year 1936?

3. Should the value of appellant's investments of shares of stock of banks organized under the laws of the Commonwealth of Pennsylvania, Pennsylvania corporations and foreign corporations, which paid or are liable to the Commonwealth of Pennsylvania for a franchise tax, be excluded from the assets of the appellant before determining taxable value of the shares?

4. Are appellant's shares owned by State banks, National banks, trust companies, and domestic corporations subject to the tax?

5. Are appellant's shares owned by nonresidents of this Commonwealth subject to the tax?

6. Are appellant's shares owned by charitable, religious, and educational institutions subject to the tax?

## Discussion

1. Appellant raises the question: "Should the value of the securities issued by the United States Government, its agencies or instrumentalities, and the Federal Reserve Bank, be excluded from the assets of the appellant before determining the taxable value of the shares?"

This precise question was before this court in Commonwealth v. Union National Bank of Reading, 51 Dauph. 362, reviewed on exceptions, 52 Dauph. 13, in opinions written by Judge Wickersham. The question was answered in the negative. We adhere to the opinion there expressed. See also Commonwealth v. City National Bank of Philadelphia, 52 Dauph. 87, 111.

2. Appellant asks whether 8 mills is the correct rate of tax to be applied for the year 1936, in computing the taxes on shares if the personal property owned by individual residents is taxed at only 5 mills?

This was determined by this court in Commonwealth v. Union National Bank of Reading, supra, and Commonwealth v. City National Bank of Philadelphia, supra. It was decided that the tax for the year 1936 on National bank shares is 8 mills. We adhere to the opinion there expressed.

3. Appellant contends that the value of its investments of shares of stock of other banks, of Pennsylvania corporations, and of foreign corporations, which paid or were liable to the Commonwealth of Pennsylvania for a franchise tax, should be excluded from the assets of appellant before determining the taxable value of the shares because the shares of stock of other National banks are deducted.

The case of Commonwealth v. City National Bank of Philadelphia, supra, governs this point. It is authority that the value of the aforesaid investments of appellant should be included in determining the tax.

4. Appellant contends that its shares owned by State banks, National banks, trust companies, and domestic corporations should not be taxed. The system of taxation of bank shares is entirely different from that concerning taxation of domestic and foreign corporations.

It was decided by this court in Commonwealth v. City National Bank of Philadelphia that within the provisions of article IX, sec. 1, of the Pennsylvania Constitution these systems are mutually exclusive and proper.

Power to classify bank shares for taxation is complete, and has been abundantly sustained: Commonwealth v. City National Bank of Philadelphia, supra; Commonwealth v. Mortgage Trust Co., 227 Pa. 163; and Schuylkill Trust Co. v. Pennsylvania, 302 U. S. 506.

5. Are the shares held by nonresidents of this Commonwealth subject to the tax? We think they are.

There is no doubt that the Commonwealth has the right to tax shares of banks within the State held by nonresidents.

In 3 Cooley on Taxation 1993, §995, it is said: "The State may tax the shares at the place where the bank is located, without regard to the residence of shareholders."

In section 265, 61 C. J. 278, the following appears:

"In accordance with general principles as to taxation of shares of nonresident stockholders, the state may assign to shares of bank stock a situs, for purposes of taxation, at the place of business of the bank, although the shareholder is a nonresident."

This rule has been applied without regard to whether the bank is incorporated under the laws of the State or the laws of the United States.

In holding the nonresident shareholders of a National bank in Kentucky subject to a tax imposed by

that State the Supreme Court of the United States said:

. "If the State of Kentucky had a claim against a stockholder of the bank who was a non-resident of the State, it could, undoubtedly, collect the claim by legal proceeding, in which the bank could be attached or garnisheed, and made to pay the debt out of the means of its shareholder under its control. This is, in effect, what the law of Kentucky does in regard to the tax of the State on the bank shares . . .": First National Bank of Louisville v. Kentucky, 76 U. S. 353, 362 (1869).

Chief Justice Waite in Tappan v. Merchants' National Bank, 86 U. S. 490, 500, said:

"The State, therefore, within which a National bank is situated has jurisdiction, for the purposes of taxation, of all the shareholders of the bank, both resident and nonresident . . ."

In Schuylkill Trust Co. v. Pennsylvania, supra, at page 514, the Supreme Court held that nonresident, as well as resident, stockholders were within the scope of the statute of this State imposing tax upon trust companies.

Appellant does not seriously contend that the Commonwealth has no power by proper legislation to impose a tax upon nonresident shareholders, nor does it contend that there is any material difference between the act imposing a tax on trust companies and the act imposing a tax on National banks which would call for a different interpretation relative to the imposition of the tax upon the shares of nonresidents.

In Commonwealth v. Schuylkill Trust Co., 315 Pa. 429, Chief Justice Frazer said (p. 433):

"We are of opinion the Act of 1907, P. L. 640, as amended by the Act of April 25, 1929, P. L. 673, establishes the situs of the shares of appellant in Pennsylvania for the purpose of taxation within the meaning of the act."

The said Act of June 13, 1907, P. L. 640, which imposed the tax on trust companies, and the Act of July 15, 1897, P. L. 292, which imposed the tax upon National banks, both directed the bank, *at its option*, to pay the tax from its general fund *or* to collect it from the shareholders. Both acts were amended in 1933 so that the duty was imposed upon the bank to collect the amount of said tax from its shareholders.

Appellant contends that the amendment of 1933 changes the rule laid down in the Schuylkill Trust Co. case, supra, relative to the tax on the shares of nonresidents. With this we cannot concur. In our opinion the act, with the amendment of 1933, establishes the situs of the shares of appellant at the place where the bank is located for the purpose of taxation. The tax is collected by the Commonwealth from the place where the bank is located. That is the situs created by the legislature for the shares of resident and nonresident shareholders alike.

6. The question is raised whether the bank's shares owned by charitable, religious, and educational beneficial institutions are subject to the tax. The tax is on the shares and against the shareholders: Commonwealth v. Provident Trust Company of Philadelphia, 40 Dauph. 146.

The Bank Shares Tax Act of 1897, as amended, and the Trust Company Shares Tax Act of 1907, as amended, put the duty upon the bank or trust company "to collect the amount of said tax from its shareholders and pay the same to the State Treasurer, through the Department of Revenue."

If this tax is imposed upon the shares of stock of appellant owned by religious, charitable, and educational institutions, it is therefore imposed upon the personal property of such institutions. The Commonwealth contends that this stock is taxable because appellant cannot point to any statute "exempting" such shares from the provision of the Tax Act. The ques-

tion, however, is not whether these shares are "exempt" but whether they are "included" within a tax statute.

It is not incumbent upon appellant to show any exemption until it is first clearly demonstrated that they are subject to the tax: General Assembly v. Gratz et al., 139 Pa. 497 (1891); Commonwealth v. Provident Trust Company of Philadelphia, 41 Dauph. 1, 7; Commonwealth v. The Union Trust Company of Pittsburgh, 50 Dauph. 266, 286.

Since its earliest days it has been the policy of this Commonwealth to abstain from taxing the personal property of charitable and religious associations.

Over fifty years ago the courts of this Commonwealth recognized as an established policy that property of charitable and religious associations was not taxable under general statutes unless the legislature made it clear that it intended the property of such institutions to be taxed.

The Act of June 1, 1889, P. L. 420, imposed a tax on enumerated classes of personal property, "owned, held or possessed by *any* person, persons, co-partnership, or unincorporated association or company, resident, located or liable to taxation within this Commonwealth, or by *any* joint stock company or association, limited partnership, bank or corporation . . ." (Italics supplied.)

The act seemed to be all-inclusive but the court said, in General Assembly v. Gratz et al., supra (p. 508) :

"When the legislature of Pennsylvania, turning its back upon all the previous history of the state, shall deliberately resolve to recruit the finances of the commonwealth by a raid upon the treasuries of all the charities within its limits, by seizing money which has been devoted to pious and religious uses and to the relief of the distressed, they will doubtless do it at any rate in an open and manly way, and not by the use of doubtful phrases' or ambiguous and concealed mean-

ings. That they are not chargeable with having attempted to do it, by the passage of the Act of 1889, we are fully convinced."

The aforesaid Act of June 1, 1889, P. L. 420, imposed a tax on "*all* mortgages owing by solvent debtors . . . owned, held or possessed by *any* person", etc., but the court in Mattern v. Canevin, 213 Pa. 588 (1906), adopted the rule laid down in the Gratz case and said that the legislature had in no clear and express terms provided for the taxation of property held by charitable and religious institutions.

The Personal Property Tax Act of June 17, 1913, P. L. 507, provided that "*all* personal property of the classes hereinafter enumerated, owned, held or possessed by *any* person, persons," etc., should be taxable for county purposes, but the Supreme Court in Buhl's Estate, 300 Pa. 29, said that the language did not include personal property held for charitable purposes.

The Act of June 8, 1891, P. L. 229, imposed a tax on "*all* personal property of the classes hereinafter enumerated, owned, held or possessed by *any* person, persons, co-partnership or unincorporated association or company, resident, located or liable to taxation, within this Commonwealth . . ." (Italics supplied.)

But this court in Commonwealth v. William M. Lloyd Co., 15 Dauph. 149 (1912), held that property held for religious and charitable purposes is not subject to the said tax.

The Building and Loan Tax Act of June 22, 1897, P. L. 178, as amended, imposed a tax "upon *all* full paid, prepaid, and fully matured, or partly matured stock in *any* building and loan association incorporated under the laws of this State . . ."; but in Commonwealth v. Keystone State Building & Loan Assn., 44 Dauph. 191, 199 (1937), this court held the tax was not imposed upon . . . full paid stock owned by religious, charitable, educational or benevolent corporations, institutions and associations of this Commonwealth . . ."

The Act of June 17, 1913, P. L. 507, as amended, provides: "That all personal property of the classes hereinafter enumerated . . . held or possessed by *any* . . . bank or corporation . . . whether such personal property be . . . held, or possessed by such . . . [bank or corporation] in . . . its own right, or as active trustee . . . for the use, benefit, or advantage of any other . . . corporation,—is hereby made taxable, annually, for county purposes . . ." (Italics supplied.) ; but in Union Trust Company of Pittsburgh's Account, 326 Pa. 251, the court held that securities given by Henry C. Frick to Princeton University and in the hands of the Union Trust Company of Pittsburgh were not liable to the tax because it was devoted to charitable uses. It was argued by the taxing authority in that case that the tax was payable unless an exemption could be found in the Act of May 22, 1933, P. L. 853, sec. 204; but again as the courts have done consistently since the Gratz case it was pointed out that such securities were not taxed because the legislature had not indicated intention to *include* them in the taxing act and not because there was any statutory "exemption".

See also the opinion of Deputy Attorney General (now Judge) Kun in Corporations—Obligations, 45 Pa. C. C. 551 (1916), and the opinion of Deputy Attorney General Metzger in Horn & Hardart Baking Company's Petition, 6 D. & C. 748 (1925).

The Act of July 15, 1897, P. L. 292, as amended, 72 PS §1931, imposes the tax here in question.

This is a tax not upon the bank but upon the shareholders. Although the imposition of the tax appears to be general on all of the shares of said banks, so did the imposition of the taxes set forth above appear to be general upon all of the designated type of property. In all of the above cases it was held, however, that the acts did not apply to the property owned by religious, charitable, educational, or beneficial corporations, institutions, or associations.

This follows a rule frequently stated and applied by the highest court of our country.

"It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of it makers": Holy Trinity Church v. United States, 143 U. S. 457, 459.

In the above case the Church of the Holy Trinity in New York City entered into an agreement with E. Walpole Warren, an alien residing in England, to come to the City of New York and serve it as rector and pastor. It was contended that this was in violation of an act prohibiting the importation of aliens under contract or agreement to perform labor in the United States. The court conceded that what the church did was within the letter of the act, but held that the act did not apply to this case. Justice Brewer, after reciting the above rule, said (p. 459) :

"This is not the substitution of the will of the judge for that of the legislator, for frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the observed results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act."

In United States v. Kirby, 7 Wall. 482, 486, the Supreme Court said :

"General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language, which would avoid results of this character. The reason of the law in such cases should prevail over its letter."

In The United States v. Palmer et al., 3 Wheat. 610, 631, Chief Justice Marshall said: "The words 'any person or persons,' are broad enough to comprehend every human being. But general words must not only be limited to cases within the jurisdiction of the state, but also to those objects to which the legislature intended to apply them."

We feel that in applying the above rule and following the cases referred to above, this tax is not imposed upon charitable, religious, educational, or benevolent institutions.

This is the first time that this question has been raised and the Department of Revenue has successfully collected on shares held by the aforesaid organizations for a number of years.

The Act of July 15, 1897, P. L. 292, directed the bank, *at its option*, to pay the tax from its general fund *or* to collect it from the shareholders.

By the Act of May 31, 1933, P. L. 1130, the duty was put upon the bank "to collect the amount of said tax from its shareholders and pay the same to the State Treasurer, through the Department of Revenue."

Prior to the amendment of 1933, it may not have been so clear that the tax was reaching into the pockets of charitable and religious institutions because the bank had the option of paying the tax from its general fund. Since the amendment of 1933, however, it is clear that the tax does reach into the pockets of the charitable and religious institutions.

To impose the tax on the shareholders as the legislature did by the amendment of 1933 leaves no doubt that the tax, if assessed against all shareholders, would be a tax upon the personal property of charitable and religious institutions.

It seems reasonable to infer from the testimony that prior to the amendment of 1933 the appellant made no effort to collect this tax from the shareholders, and I think it is fair to assume that this was the general practice. It further appears from the testimony that at the

present time appellant has not had much success in its effort to collect the tax from the shareholders when the shares are held for charitable and religious purposes.

It is our opinion that the legislature, neither by the original act nor by the amendment of 1933, intended to reverse the policy of this Commonwealth which has existed from its beginning. We believe that when the legislature intends to do this, in the words of Judge Thayer in the Gratz case (p. 508), "they will doubtless do it . . . in an open and manly way, and not by the use of doubtful phrases or ambiguous and concealed meanings." Certainly this Commonwealth, great in industry and natural resources, has not found it necessary to reverse this policy and to reach into the pockets of its charitable and religious institutions and enrich itself from funds devoted to the sick, the poor, and the needy. It was pointed out by the Trustees of the Hershey Industrial School, who have appealed the assessment of this tax on shares held by them and who filed a brief as amicus curiæ in this case, that the tax, if collected, will actually result in a reduction of the number of boys who can be educated at that splendid institution.

This is only one of the hundreds of charitable and religious institutions through the State whose bank shares and other personal property we are confident the legislature had no intention of taxing.

7. Imposition of the tax on appellant's shares owned by nonresidents is not in violation of the Constitution of Pennsylvania or the Fourteenth Amendment to the Constitution of the United States.

8. Shares of stock of appellant owned by religious, charitable, and educational institutions were not intended by the legislature to be taxed by the Act of 1897, as amended.

### Statement

In the resettlement from which this appeal was taken, the amount of tax assessed by the taxing authorities and paid by appellant was $83,609.80.

The correct amount of tax due is $83,234.48, because there should not have been included as taxable shares the 1,010 shares of appellant held by charitable, religious, and educational institutions, valued at $46,914.50 ($46.45 value of each share x 1,010, number of said shares), which reduces the amount of tax by $375.32.

The amount of tax admitted due by appellant was $28,878.23.

Judgment should therefore be entered for the Commonwealth determined as follows:

| | | |
|---|---|---|
| Amount of tax due ............ | | $83,234.48 |
| Attorney General's commisison | | |
| Tax due .......... | $83,234.48 | |
| Tax admitted ....... | 28,878.23 | |
| Tax in dispute ..... | $54,356.25 | |
| Attorney General, 5% on $10,000 ..... | 500.00 | |
| Attorney General, 1% on $44,356.25 .. | 443.56 | |
| | | 943.56 |
| Total judgment for Commonwealth ................. | | $84,178.04 |
| Paid by appellant ............ | | 83,609.80 |
| Net amount due Commonwealth by appellant ... | $ | 568.24 |

### Decree nisi

And now, to wit, September 21, 1942, judgment is hereby directed to be entered in favor of the Commonwealth and against the First National Bank of Scranton for the balance of $568.24, remaining due according to the above statement, unless exceptions be filed within the time limited by law.

The prothonotary is directed to notify the parties or their counsel of this decree forthwith.