393 A.2d 634

COMMONWEALTH of Pennsylvania

v.

RAGNAR BENSON, INC., Appellant.

Supreme Court of Pennsylvania.

Argued May 23, 1978.

Decided Oct. 5, 1978.

Reargument Denied Nov. 22, 1978.

Albert J. Tomalis, Jr., Harrisburg, for appellant.

Robert P. Kane, Atty. Gen., Paul S. Roeder, Deputy Atty. Gen., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Ragnar Benson, Inc. (Benson), an engineering and construction firm, designed and built two cooling towers at the Philadelphia Electric Corporation's Limerick power plant near Pottstown, Pennsylvania.[1] Benson was assessed a use tax by appellee, Commonwealth of Pennsylvania, on certain items and material used in the construction of the cooling towers.[2] In August and September of 1972, the Commonwealth completed an audit of Benson's business activities in connection with the construction of the Limerick cooling towers. As a result of this audit, Benson was assessed $3,206.03. This amount represented the Commonwealth's determination of Benson's deficiency in the use tax payable to the Commonwealth. Benson filed a petition for reassessment with the Commonwealth Sales Tax Board of Review, contesting $582.80 out of the $3,206.03 deficiency sought by the Commonwealth. The Sales Tax Board of Review denied Benson's petition. Benson then sought relief by filing a petition for review with the Board of Finance and Revenue. The Board of Finance and Revenue deter-

1. Benson is an Illinois corporation.

2. The following assessments were contested: $13.91 for rock bolts (steel bolts that anchor the towers in bed rock), $25.29 for a pump, test jack and torque wrench rented by appellant, $.60 for surveying materials consumed, $79.72 for covering material used to protect lumber and other materials from weather at the job site, $11.80 for lumber and nails used in building temporary weather sheds, and $289.68 for lumber and nails used in building a form for concrete for the towers.

mined that of the $582.80 contested by Benson, $161.78 was mistakenly assessed as due and owing delinquent use tax. Benson then appealed to the Commonwealth Court. On November 24, 1976, Commonwealth Court granted Benson additional tax relief in the amount of $13.91, thereby reducing the amount in controversy before this court to $407.11. On December 22, 1976, Benson filed exceptions to the Commonwealth Court's order, and on December 23, 1977, the Commonwealth filed exceptions contesting the continued validity of *Commonwealth v. Erie Excavating & G. Co.*, 432 Pa. 593, 248 A.2d 191 (1968).

Commonwealth Court, on June 16, 1977, denied both sets of exceptions and entered a final judgment in favor of the Commonwealth. On July 13, 1977, Benson filed an appeal to this court. The Commonwealth has not filed an appeal or a cross-appeal from the final order of the Commonwealth Court in the instant case.[3]

Appellant argues that it is entitled to a public utility exemption from the Pennsylvania Use Tax. We do not agree.

The use tax was assessed under the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, No. 2, art. I, § 101, et seq., 72 P.S. § 7101, et seq. The applicable rate is six percent of the purchase price of the subject property. Art. II, § 202(b). Taxable uses include:

"The exercise of any right or power incidental to the ownership, custody or possession of tangible personal property and shall include, but not be limited to transportation, storage or consumption." Art. II, § 201($o$)(1), 72 P.S. § 7201($o$)(1).

The tax does not apply to property used in:

"The producing, delivering or rendering of a public utility service, or in constructing, reconstructing, remodel-

---

**3.** See Pennsylvania Rules of Appellate Procedure 903(b). Therefore, we do not reach the merits of the question concerning the continued validity of *Erie Excavating, supra.*

ing, repairing or maintaining the facilities which are directly used in such service. . . ." § 201(*o*)(4)(B)(iii). But this exemption does not apply to:

". . . materials or supplies to be used or consumed in any construction, reconstruction, remodeling, repair or maintenance of real estate other than machinery, equipment or parts therefor that may be affixed to such real estate . . . the purchase or use of tangible personal property by any person other than the person directly using the same . . . [providing public utility service], the purchase or use of tangible personal property by any person other than the person directly using the same in [such service, or] tools and equipment used but not installed in the maintenance of facilities used directly in the production, delivering or rendition [thereof]. . . ." § 201(*o*)(4)(B).

We find that the exemption does not apply to the items involved (see n. 2, *supra*) and that appellant is not entitled to any applicable exemption. The involved items consist of materials used in the construction of the cooling towers and were, therefore, used in the construction of real estate. They are subject to tax because they were not affixed to the real estate as required. See *Commonwealth v. Beck Electric Construction, Inc.*, 32 Pa.Cmwlth. 229, 379 A.2d 626 (1977).

The order of the Commonwealth Court is affirmed.

POMEROY, J., concurs in the result.

MANDERINO, J., files a dissenting opinion.

MANDERINO, Justice, dissenting.

I dissent. The appellant is entitled to an exemption from the Pennsylvania Use Tax. Section 201(*o*)(4)(B) of the Tax Reform Code of 1971 provides that tangible personal property used or consumed in any of the operations of constructing facilities which are directly used to produce or deliver a public service are not subject to tax. The materials and tools involved in this appeal are tangible personal property and since they were used in constructing cooling towers for

Philadelphia Electric Corporation they come within the ambit of this exemption.

The parties stipulated. that this same Section would exclude from tax these same tools, materials and supplies if the public utility utilized these items in the identical manner as appellant utilized them. (R–12a)

The majority errs when it says that this appellant must be taxed for these items because they were not affixed. The last paragraph of Section 201(o )(4)(B) does list exceptions to the granting of the exemption, however these exceptions must be read in conjunction with the previous language granting the exemption. The interpretation of the exceptions employed by the majority requiring all materials or supplies to be "affixed" strips the general exemption of any rational meaning.

Additionally, the legislature carefully stated in this same section that "tools and equipment used but not installed in the *maintenance* of facilities" *are subject* to tax. If the legislature had meant this same standard to apply to tools and equipment utilized in *construction* activities, it would have so stated in the same unambiguous language.