726 A.2d 384

GLENN JOHNSTON, INC., Appellant,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF REVENUE, Appellee.

Supreme Court of Pennsylvania.

Submitted Nov. 4, 1998.

Decided March 26, 1999.

Lloyd R. Persun, Mette, Evans & Woodside, Harrisburg, for Glenn Johnston, Inc.

Bart J. Deluca, Jr., Deputy Attorney General, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

*OPINION OF THE COURT*

CAPPY, Justice.

The primary question with which we are presented in this matter is whether machinery, parts and supplies used in constructing a public utility facility, but not installed on the site of the facility, are exempted from the tax imposed via 72 P.S. § 7202(b) (commonly known as the "use tax"). We hold that such items are not exempted and therefore affirm the order of the Commonwealth Court.

The relevant facts have been stipulated by the parties pursuant to Pa.R.A.P. 1571(f). Glenn Johnston, Inc. ("Johnston") is a Pennsylvania corporation engaged in business as a

public utility contractor; its only customers are public utilities. The machinery at issue includes backhoes, air compressors, loaders, bulldozers, graders, and an asphalt spreader; also included are parts and supplies for all of the enumerated machinery. The machinery, parts and supplies were used in the construction of water mains, sewers and manholes for public utilities. Once these structures were completed, they were turned over to the public utilities for which Johnston performed the work. The water mains, sewers and manholes were subsequently used directly in rendering public utility service.

On September 1, 1995, Johnston filed a petition for refund with the Board of Appeals of the Department of Revenue ("Board of Appeals"). The petition requested a refund of the amount of sales tax Johnston had paid on the machinery, parts and supplies. On March 1, 1996, the Board of Appeals denied relief.

Johnston appealed to the Board of Finance and Revenue ("Board"). The Board determined that Johnston had not demonstrated that it was entitled to the exemption from the use tax because the machinery, parts and supplies were not "affixed to ... real estate" as required by 72 P.S. § 7201(o)(4)(B).

The Commonwealth Court affirmed on appeal. The lower court correctly noted that this court has stated that machinery, parts and supplies which are involved in the construction of real estate for a public utility but are not affixed to the real estate are not entitled to an exemption from the use tax. 712 A.2d 817, 819–20 (citing *Commonwealth v. Ragnar Benson, Inc.*, 482 Pa. 224, 393 A.2d 634, 636 (1978)). Thus, as the items in question in this matter were not affixed to real estate, Johnston was not entitled to claim an exemption from the use tax for them.

The Commonwealth Court's decision, however, was marked with a certain amount of trepidation as it found the rule enunciated by *Ragnar Benson* to be ill-advised. In arriving at this conclusion, the lower court expressed its opinion that the

lone dissenter in *Ragnar Benson*, Mr. Justice Manderino, put forth a more persuasive position than did the majority of the *Ragnar Benson* court. Moreover, the Commonwealth Court believed that the *Ragnar Benson* rule should be abandoned as it leads to inequitable results.

Johnston filed its appeal with this court. Johnston's primary contention before this court is that the plain statutory language of 72 P.S. §§ 7201 and 7202 mandates that the machinery, parts and supplies in question are exempt from the sales tax, regardless of the fact that they are not "affixed to real estate". It therefore claims that *Ragnar Benson* and its successor case, *Ernest Renda Contracting Co., Inc. v. Commonwealth*, 516 Pa. 325, 532 A.2d 416 (1987), should be overruled.[1]

To determine whether the machinery, parts and supplies in question are exempt, we must examine several different subsections of the taxing provisions in question. While the path set forth in the statute might at times appear circuitous, we find that a methodical analysis reveals that the statutory language mandates that the items at issue in the matter *sub judice* do not escape the use tax.

The use tax is broadly "imposed upon the use ... within this Commonwealth of tangible personal property purchased at retail ... a tax of six per cent of the purchase price...." 72 P.S. § 7202. The ambit of the tax's reach, however, is circumscribed by various limitations which the General Assembly placed on the definition of the term "use". These limitations effectively created exemptions from the tax. The exemption which is being examined in the matter *sub judice* states in pertinent part that:

(4) [T]he term "use" shall not include—

. . .

---

**1.** At the outset of our analysis, we note that our standard of review in a tax appeal is to determine whether the trial court abused its discretion, committed an error of law, or rendered a decision unsupported by the evidence. *In re Marple Springfield Center, Inc.*, 530 Pa. 122, 607 A.2d 708, 709 (1992).

(B) The use or consumption of tangible personal property, including but not limited to machinery and equipment and parts therefor, and supplies or the obtaining of services described in subclause ... (3) .... of this clause directly in the operations of

...

(iii) The producing, delivering or rendering of a public utility service, or in constructing, reconstructing, remodeling, repairing or maintaining the facilities which are directly used in the producing, delivering or rendering of such service;

72 P.S. § 7201(*o*)(4)(B).

Were we to stop our examination of the use tax at this juncture, we would conclude that the items in question are exempt from the tax for they were used in constructing structures for a public utility which are directly used in the delivery or rendering of a public utility service.[2] We cannot, however, terminate our analysis at this juncture for the legislature provided an exception to this particular exemption. That exception states, in pertinent part, that

[t]he exclusions provided in subparagraph[] ... (3) ... shall not apply ... to materials, supplies or equipment to be used or consumed in the construction, reconstruction, remodeling, repair or maintenance of real estate other than directly used machinery, equipment parts or foundations therefor that may be affixed to such real estate.

*Id.* The legislature further elaborated on this exception by emphasizing that

[t]he exclusion provided in subparagraph (iii) shall not apply to (A) construction materials, supplies or equipment used to construct, reconstruct, remodel, repair or maintain facilities not used directly by the purchaser in the production, delivering or rendition of public utility service or (B) tools and equipment used but not installed in the maintenance of

2. As noted *supra,* the parties stipulated that the water mains, sewers and manholes constructed by Johnston are used directly in rendering public utility service.

facilities used directly in the production, delivering or rendition of public utility service.

*Id.*

This court in *Ragnar Benson* was asked to apply the exemption found in § 7201(*o*)(4)(B), and the exception to the exemption, to a matter which is strikingly similar to the matter *sub judice.* In *Ragnar Benson*, a private contractor which had constructed two cooling towers for the Philadelphia Electric Corporation claimed that the equipment and materials used in the construction were exempt from the use tax per § 7201(o)(4)(B). This court rejected that position. We held that the plain statutory language of § 7201(*o*)(4)(B) directed that items which are used in the construction of public utility facilities, but which are not affixed to the real estate, are subject to the use tax. We concluded that since the items in question "were not affixed to the real estate as required," they were not entitled to the exemption. *Ragnar Benson*, 393 A.2d at 636.

We agree with the Commonwealth Court that the *Ragnar Benson* holding controls the disposition of the matter *sub judice* and dictates that Johnston cannot prevail on its claim as the items in question "were not affixed to the real estate as required." *Id.*

Normally, the recitation of controlling precedent issued by this court would announce the end of our analysis. In this matter, however, we believe that further examination is appropriate as the lower court expressed discomfort with the *Ragnar Benson* holding and specifically requested guidance on this issue.

The Commonwealth Court presented two bases for its conclusion that the rule announced by *Ragnar Benson* should be abandoned. First, it relied on the dissent in *Ragnar Benson.* The gist of this dissent was that the majority, in holding that items used in the construction of a public utility facility but not affixed to the real estate are not entitled to the exemption, had violated the intent of the legislature. That dissenting opinion

presented two reasons to support this position. The first argument was that

> [t]he majority errs when it says that this appellant must be taxed for these items because they were not affixed.... The interpretation of the exceptions employed by the majority requiring all materials or supplies to be "affixed" strips the general exemption of any rational meaning.

*Ragnar Benson,* 393 A.2d at 636 (Manderino, J., dissenting). We have thoroughly reexamined this dissenting opinion; with all due respect to the late Mr. Justice Manderino, we must again decline adopting the position he championed. Contrary to the dissent's argument, the general exemption is not "strip[ped] ... of any rational meaning" by application of the *Ragnar Benson* rule since any construction materials which are affixed to the public utility site do escape the tax. Construction materials which would be "affixed" to the public utility site, and therefore are eligible for the exemption, are within common knowledge. For example, any cement or pipes which were used by Appellant in the construction of these water mains or sewers would be entitled to the exemption as they are "affixed" to real estate. Thus, we find the first argument presented by the dissent in *Ragnar Benson* to be unpersuasive.

Second, the dissent argued that the majority's interpretation could not be correct since "the legislature carefully stated in this same section that 'tools and equipment used but not installed in the *maintenance* of facilities' *are subject* to tax. If the legislature had meant this same standard to apply to tools and equipment utilized in construction activities, it would have so stated in the same unambiguous language." *Id.* (emphasis in the original). This statement is most perplexing as the legislature did indeed state in unambiguous language that "materials, supplies or equipment to be used or consumed in the construction ... of real estate other than directly used machinery, equipment, parts or foundations therefor that may be affixed to such real estate ...." were not entitled to the exemption. 72 P.S. § 7201(*o*)(4)(B). We therefore find that

neither argument presented in the *Ragnar Benson* dissent is well reasoned.

Furthermore, we note that the test of time has shown that the majority of the *Ragnar Benson* court was correct in its efforts to divine the legislature's intent concerning this particular exemption from the use tax. In the two decades since we issued our *Ragnar Benson* decision, the legislature has amended this particular subsection twice; yet, neither of these amendments impacted on the interpretation offered by *Ragnar Benson*. Act 1991, August 4, No. 22; Act 1986, July 2, P.L. 318, No. 77. Thus, it may be presumed that *Ragnar Benson*'s interpretation of this issue was correct. *Commonwealth v. Willson Products, Inc.*, 412 Pa. 78, 194 A.2d 162, 167 (1963) (where the legislature fails to amend a statute after this court has issued its interpretation of the law, a presumption is created that this court's interpretation was in accordance with the legislative intent).

As its second basis for disagreeing with the *Ragnar Benson* decision, the Commonwealth Court argued that the *Ragnar Benson* rule should be abandoned because it works inequities. Specifically, the Commonwealth Court contends that had a public utility, rather than a private contractor, used or rented the same machinery, parts, and supplies, the public utility would not be subject to the tax whereas the private contractor would. 712 A.2d at 820 n. 5. The Commonwealth Court concluded that such a situation is inequitable, and requests that this court revisit *Ragnar Benson*, presumably so that we can rebalance the equities to make the tax more "fair".[3]

In addressing this point, we first note that the Commonwealth Court failed to cite to any statutory provision or case law in support of its proposition that a public utility would escape taxation where a private contractor such as Johnston would not; our own independent review of the statutory and case law similarly failed to uncover support for such a position. Yet, as we are not presently confronted with

3. We note that neither the Commonwealth Court below nor Johnston claims that this alleged unfairness is of a constitutional dimension.

a matter where a public utility is arguing that the tax does not apply, we need not decide that issue at this juncture; rather, we will assume *arguendo* that the Commonwealth Court is correct in stating that a similarly situated public utility would indeed escape taxation. Even making such allowances for the Commonwealth Court's position, we still must conclude that there is insufficient basis for us to overrule *Ragnar Benson.* As noted above, the legislature has clearly determined that a private contractor such as Johnston cannot avoid the use tax on machinery, materials, and supplies which are utilized in the construction of a public utility facility but are not ultimately affixed to real estate. The Commonwealth Court, in essence, asks us to reassess the fiscal and other policy determinations made by the legislature in the course of its drafting this statute. Such policy determinations, however, are within the exclusive purview of the legislature, and it would be a gross violation of the separation of powers doctrine for us to intrude into that arena. *See Pap's A.M. v. Erie*, 553 Pa. 348, 719 A.2d 273, 281 (1998). Thus we cannot accommodate this suggestion.

Next, we turn to Johnston's claim that the Board violated the Uniformity Clause of the Pennsylvania Constitution[4] as well as the Equal Protection Clause of the United States Constitution[5] by issuing inconsistent decisions in matters which presented identical issues relating to this particular exemption to the use tax. Apparently, prior to July 1996, the Board awarded refunds in several matters which presented nearly identical facts to the ones presented in the matter at

**4.** Article VIII, Section 1 of the Pennsylvania Constitution provides:

All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws.

Pa. Const. art. 8 § 1.

**5.** The Fourteenth Amendment to the United States Constitution provides in relevant part:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

bar. In July 1996, however, the Board discovered the existence of *Ragnar Benson* and its progeny. Since that time, the Board has correctly applied the holding from these cases and has consistently denied refunds to taxpayers, including Johnston, on this issue.

Johnston claims that the Board's denial of its claim for a refund is inconsistent with the Board's earlier decisions, and this inconsistency violates the Uniformity Clause and the Equal Protection Clause. Although we are perplexed at the Board's failure to discover long established precedent from this court which is squarely on point, we do not agree with Johnston that constitutional principles require that this court compound the Board's error. As the Commonwealth Court below correctly held, "a conflicting decision by the Board on an identical issue does not estop the Board [or an appellate court] from adjudicating the issue correctly, nor does it violate the Uniformity Clause of the Pennsylvania Constitution or the Equal Protection Clause of the United States Constitution." 712 A.2d at 820 (citing *Commonwealth v. Western Maryland Railway Co.*, 377 Pa. 312, 105 A.2d 336 (1954) and *Commonwealth v. Beck Electric Construction*, 32 Pa.Cmwlth. 229, 379 A.2d 626 (1977), *aff'd in part and rev'd in part on other grounds*, 485 Pa. 604, 403 A.2d 553 (1979)). The reasoning of the Commonwealth Court is sound and we see no reason to disturb it. We therefore reject Johnston's position on this final issue.

For the foregoing reasons, we affirm the order of the Commonwealth Court.