**ALLFIRST BANK, Petitioner**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 1, 2006.

Decided March 27, 2006.

Jeffrey S. Blum, Pittsburgh, for petitioner.

Michael A. Roman, Sr. Deputy Attorney General, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge.

OPINION BY Judge McGINLEY.

This is an appeal by Allfirst Bank (Allfirst) from the Orders of the Board of

Finance and Revenue (Board) that refused Allfirst's Petitions for Review, in which Allfirst alleged it was not subject to the Bank and Trust Company Shares Tax ("Bank Shares Tax"), imposed by Section 701 of the Tax Reform Code of 1971, Act of March 4, 1971, *as amended*, 72 P.S. § 7701, for the tax periods January 1, 1999, and January 1, 2000.

The parties entered into a stipulation of facts (Stipulation) in accordance with Rule 1571(f) of the Pennsylvania Rules of Appellate Procedure.[1] The Stipulation was filed with this Court on August 25, 2005. Allfirst was a wholly-owned subsidiary of First Maryland Bancorp (FMB), until September 15, 1999, when FMB merged with and into Allfirst Financial, Inc. (AFI). Stipulation at Paragraph 3. FMB was incorporated in Maryland. Stipulation at Paragraph 4. AFI is incorporated in Delaware. Stipulation at Paragraph 5. At all relevant times FMB's and AFI's primary place of business was located in Baltimore, Maryland. At all relevant times neither FMB nor AFI engaged in banking activities in Pennsylvania. Stipulation at Paragraphs 6–7.

Pursuant to Section 701 of the Act, 72 P.S. § 7701, every banking institution located in Pennsylvania must file a written report with the Department of Revenue (Department) on or before March 15th of each calendar year which sets forth the number of shares of capital stock subscribed for or issued as of the preceding January 1st. Thereafter, the "Bank

Shares Tax" is imposed at the rate of 1.25% upon the taxable value of the shares that are apportioned to Pennsylvania. 72 P.S. § 7701. **The Act permits banking institutions located in Pennsylvania to compute and pay the "Bank Shares Tax" from either their general fund or funds that they collect from their shareholders.** *Id.* (emphasis added).

Allfirst filed its reports for the tax periods January 1, 1999, and January 1, 2000. Stipulation at Paragraph 8. Allfirst paid the tax liabilities as indicated on the reports. Stipulation at Paragraph 9. The Department resettled Allfirst's reports for the January 1, 1999, and January 1, 2000, on January 24, 2003. Stipulation at Paragraph 10. Allfirst's Petitions for Review were denied by the Board. Stipulation at Paragraph 11. This appeal followed.

■ On appeal Allfirst contends: 1) that the "Bank Shares Tax" improperly taxes the intangible personal property of its shareholders; and 2) that the Fourteenth Amendment to the United States Constitution prohibits the imposition of the "Bank Shares Tax" on Allfirst, AFI or its shareholders because they are neither incorporated nor domiciled in Pennsylvania.[2]

## I. Is the Bank Shares Tax a property tax levied upon the owners of stock in banking institutions?

■ The instructions which accompanied the report that banking institutions were required to file for the 1999 and 2000

---

1. Pa. R.A.P. 1571(f) provides:

No record shall be certified to the court by the Board of Finance and Revenue. After the filing of the petition for review, the parties shall take appropriate steps to prepare and file a stipulation of such facts as may be agreed to and to identify the issues of fact, if any, which remain to be tried. See Rule 1542 (evidentiary hearing).

2. This Court's review "[w]hen reviewing a decision of the Board of Finance and Revenue, this Court has the broadest discretion because, although brought within our appellate jurisdiction, this Court essentially performs the function of a trial court." *Glenn Johnston, Inc. v. Commonwealth*, 712 A.2d 817, 819 n. 2 (Pa.Cmwlth.1998), *affirmed*, 556 Pa. 22, 726 A.2d 384 (1999).

tax years in conjunction with the "Bank Shares Tax" state:

> The Bank and Trust Company Shares Tax is a property tax imposed on the shareholders of banks having capital stock, trust companies having capital stock, and trust companies having capital stock; incorporated by or under any law of Pennsylvania or the United States or any other jurisdiction and located in Pennsylvania.

Stipulation at Paragraph 13 and Exhibit I.

Since the Department's own documents identify the "Bank Shares Tax" as a "property tax imposed on the shareholders," Allfirst contends that the Commonwealth is foreclosed from successfully contending that the "Bank Shares Tax" is specifically a tax on the bank rather than on the bank's shareholders.

In further support of its argument, Allfirst references the Department of Revenue's internet website section dealing with the "Bank Shares Tax." The internet website section states that shares of stock held by exempt holders (including charitable, religious, and educational institutions) are exempt from the "Bank Shares Tax." Stipulation at Paragraph 14 and Exhibit L. The reports for the 1999–2000 tax years also noted, that the value of stock owned by exempt holders is not included in the calculation of the "Bank Shares Tax" owed.

Finally, Allfirst alleges that since the "Bank Shares Tax" is a tax levied upon shares of stock it is therefore a tax upon the shareholders of the bank. In support of its argument Allfirst relies on *Commonwealth v. The First National Bank of Scranton*, 48 Pa. D. & C. 399 (1943), where the Court of Common Pleas of Dauphin County, sitting as the Commonwealth Court, concluded that the "Bank Shares Tax" "is a tax not upon the bank but upon the shareholders."

Allfirst's reliance on *Scranton* is misplaced because there the Court analyzed the 1933 Bank Shares Tax, Act of May 31, 1933, P.L. 1130, rather than the "Bank Shares Tax" promulgated by the General Assembly in the Act in effect today. The 1933 Bank Shares Tax **required** the tax be collected from the shareholders of the bank. In contrast, the "Banks Shares Tax" in effect today gives the bank the option of paying the tax from its general fund or from an amount collected from its shareholders. 72 P.S. § 7701. It **does not require** the tax be collected from the shareholders.

Furthermore, the characterization of the tax is not significant, rather the Court should consider the practical effect of the tax. *Wisconsin, et. al. v. J.C. Penney Co.*, 311 U.S. 435, 444, 61 S.Ct. 246, 85 L.Ed. 267 (1940). This case is analogous to *Society for Savings in the City of Cleveland, Ohio v. Bowers*, 349 U.S. 143, 75 S.Ct. 607, 99 L.Ed. 950 (1955), where the United States Supreme Court held that a property tax against a mutual savings bank and a federal savings and loan association was in practical effect a tax on the banks themselves, not the depositors of the bank.

The Supreme Court reached its conclusion after scrutinizing the following factors: (1) that the state was not entitled to collect the tax from the depositors should the bank be unable to pay; (2) the statute did not relieve the bank from having to pay the tax on the interest of a depositor who had an account with the bank prior to the assessment date of the tax, but withdrew that account prior to the tax due date; and (3) the bank had no right to make itself whole from the depositors for the taxes paid on their account. *Society for Savings*, 349 U.S. at 151–152, 75 S.Ct. 607.

When these factors are applied to the "Bank Shares Tax" it is clear that the tax is levied on banks, not shareholders. The Commonwealth has no enforcement authority directly against shareholders should Allfirst default on the payment of the tax; Allfirst is not relieved from paying tax on the interest of a shareholder who sells his investment after the assessment date but prior to the payment date; and Allfirst has no statutory right to recover the tax from its shareholders.

Not only does the practical effect of the "Bank Shares Tax" prove that it is a tax on the bank, a plain reading of Section 701 of the Act, 72 P.S. § 7701, reflects the General Assembly intended the "Bank Shares Tax" to be a tax on the bank not on the shareholders of the bank. Allfirst's contention that the "Bank Shares Tax" is a property tax levied directly upon its shareholders must fail.

## II. Does the "Bank Shares Tax" violate the Fourteenth Amendment?

The Fourteenth Amendment to the United States Constitution prohibits states from depriving any person of property without due process of law. U.S. Const. Amend. XVI § 1. The United States Supreme Court has concluded that a state which taxes things beyond its jurisdiction conflicts with the Fourteenth Amendment. *Safe Deposit & Trust Co. of Baltimore, Md. v. Virginia,* 280 U.S. 83, 92, 50 S.Ct. 59, 74 L.Ed. 180 (1929).

■ Allfirst argues that the "Bank Shares Tax" violates the Fourteenth Amendment of the United States Constitu-

tion because it is a property tax levied upon the bank's non-domiciliary shareholders, rather than a tax imposed directly upon the banking institution. Allfirst was not incorporated in Pennsylvania. Allfirst did not have any shareholders incorporated or domiciled in Pennsylvania. Allfirst's sole shareholder after September 15, 1999 was AFI; a Delaware corporation with its principal place of business in Maryland and prior to September 15, 1999, Allfirst's sole shareholder was FMB, a Maryland corporation with its principal place of business in Maryland. Because it was not incorporated in Pennsylvania, and did not have any shareholders incorporated or domiciled in Pennsylvania, Allfirst maintains it is not subject to the "Bank Shares Tax." [3]

Allfirst relies on *Utah Mortgage Loan Corporation v. Gillis,* 49 Idaho 676, 290 P. 714 (1930), where the Idaho Supreme Court held that a property tax levied upon a nonresident shareholder who was neither incorporated nor domiciled in the taxing state is a direct infringement of the Fourteenth Amendment of the United States Constitution. Again, despite Allfirst's contentions to the contrary, the "Bank Shares Tax" is not a tax levied upon the bank's shareholders. The bank has the option to pay the tax from the general fund or from collections from its shareholders.

■ Pennsylvania is clearly permitted to impose a shares tax on foreign banks that operate in Pennsylvania as a result of an interstate merger. Section 102, of the Riegle–Neal Interstate Banking and Branching Efficiency Act of 1994 [4] (1994

**3.** If this Court determined that Allfirst was entitled to a refund of tax for the January 1, 1999, tax year, the amount of the refund due would be $5,530,448 plus statutory interest. Stipulation of Fact at Paragraph 16. If this Court determined that Allfirst was entitled to a refund of tax for the January 1, 2000, tax

year, the amount of the refund due would be $4,677,190 plus statutory interest. Stipulation of Fact at Paragraph 17.

**4.** Section 102 was added by the Act of September 29, 1994, P.L. No. 103–328, effective September 29, 1994.

Act), 12 U.S.C. § 1831u, amended the Federal Deposit Insurance Act.[5] Section 102 of the 1994 Act, 12 U.S.C. § 1831u(c), provides:

(c) Applicability of Certain Laws to Interstate Banking Operations.

(1) STATE TAXATION AUTHORITY NOT AFFECTED.

(A) IN GENERAL.-No provision of this section shall be construed as affecting the authority of any State or political subdivision of any State to adopt, apply, or administer any tax or method of taxation to any bank, bank holding company, or foreign bank, or any affiliate of any bank, bank holding company, or foreign bank, to the extent such tax or tax method is otherwise permissible by or under the Constitution of the United States or other Federal law.

(B) IMPOSITION OF SHARES TAX BY HOST STATES.-In the case of a branch of an out-of-State bank which results from an interstate merger transaction, a proportionate amount of the value of the shares of the out-of-State bank may be subject to any bank shares tax levied or imposed by the host State, or any political subdivision of such host State that imposes such tax based upon a method adopted by the host State, which may include allocation and apportionment.

A host state is defined as a state, other than the home State of the bank, in which the bank maintains, or seeks to establish and maintain, a branch. 12 U.S.C. § 1831u(g)(5). A home state is the State in which the bank is chartered. 12 U.S.C. § 1831u(g)(4)(ii). Pennsylvania is the host state of Allfirst. Maryland is the home state of Allfirst since it is chartered and

headquartered there. Stipulation at Paragraph 1. Allfirst is a foreign bank which conducts business in Pennsylvania as a result of the interstate merger of FMB and AFI. Therefore, Pennsylvania is authorized to impose a shares tax on Allfirst so long as the tax is based upon a method, "which may include allocation and apportionment." 12 U.S.C. § 1831u(c)(1)(B).

The "Bank Shares Tax" is imposed upon the taxable value of the shares that are apportioned to Pennsylvania. 72 P.S. § 7701. Allfirst, a foreign bank, conducted banking operations in Pennsylvania. As a result, Allfirst was required and did pay the "Bank Shares Tax" on the shares that were apportioned to Pennsylvania.

The domicile and state of incorporation of Allfirst, AFI and its shareholders are irrelevant for purposes of imposing the "Bank Shares Tax" since Allfirst is only taxed for the proportion of shares associated with its Pennsylvania presence. There is absolutely no requirement that Allfirst must recover the amount of tax paid from its shareholders, and Allfirst does not have the ability to enforce recovery from its shareholders. As the "Bank Shares Tax" is a tax levied upon banking institutions that conduct business in Pennsylvania, not on shareholders, it does not violate the Fourteenth Amendment of the United States Constitution.

The orders of the Board are affirmed.

### ORDER

AND NOW, this 27th day of March, 2006, the orders of the Board of Finance and Revenue are affirmed. The Chief Clerk is directed to enter this order as final unless exceptions are filed within 30 days in conformity with Pa.R.A.P. 1571(i).

---

**5.** Act of September 21, 1950, P.L. 797, effective September 21, 1950.

DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. The majority concludes that the Bank and Trust Company Shares Tax ("Bank Shares Tax") imposed on "shares of capital stock" under section 701 of the Tax Reform Code of 1971 [1] (Act) is a tax on banks rather than a tax on the owners of the bank stock. (Majority op. at 673.) For the following reasons, I disagree.

## I. Section 701

Section 701 of the Act provides, in pertinent part, as follows:

> Every institution shall ... make to the Department of Revenue a report in writing ... setting forth the full number of shares of the capital stock subscribed for or issued, as of the preceding January 1, by such institution, and the taxable amount of such shares of capital stock determined pursuant to section 701.1.[2] It shall be the duty of the Department of Revenue **to assess such shares** for ... each calendar year ... at the rate of 1.25 per cent upon each dollar of taxable amount thereof, the taxable amount of each share of stock to be ascertained and fixed pursuant to section 701.1, and dividing this amount by the number of shares. It shall be the **duty of every institution** ... to compute the tax and **to pay the amount of said tax** ... either from its general fund, **or from the amount of said tax collected from its shareholders** ....

72 P.S. § 7701 (emphasis added). There can be no question that: (1) the "Bank Shares Tax" is assessed on **shares** of capital stock; and (2) banks may simply **collect** the assessment from their shareholders. Therefore, although the majority states that a "plain reading" of section 701 shows that the "Bank Shares Tax" is a tax on banks, I submit that a "plain reading" of section 701 shows that the "Bank Shares Tax" is a tax on the shareholders.

## II. Department's Interpretation

The majority acknowledges that the Department of Revenue's own instructions for filing the tax returns in this case specifically state that the "Bank Shares Tax" is a tax "imposed on the shareholders of banks...." (Majority op. at 671.) Thus, the Department of Revenue, which is charged with the administration and enforcement of section 701 of the Act, *see* sections 408 and 702 of the Act, 72 P.S. §§ 7408 & 7702, has issued an official interpretation of section 701 that conflicts with the majority's "plain reading" of section 701.

The majority also acknowledges that, according to the Department of Revenue's web site, shares of stock held by exempt shareholders, e.g., charitable, religious and educational institutions, are exempt from the "Bank Shares Tax." (Majority op. at

---

1. Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 7701.

2. Section 701.1(a) of the Act states generally that the "taxable amount of shares shall be ascertained and fixed by adding together the value determined under subsection (b) for the current and preceding five years and dividing the resulting sum by six." 72 P.S. § 7701.1(a). Section 701.1(b) of the Act states that the "value for each year ... shall be determined by adding together the book value of capital stock paid in, the book value

of the surplus and the book value of undivided profits with a deduction from the total thereof of an amount equal to the same percentage of such total as the book value of obligations of the United States bears to the book value of the total assets." 72 P.S. § 7701.1(b). I note that section 701.4 of the Act allows an institution to apportion its taxable amount of shares if the institution is subject to tax in another state based on net worth, gross receipts, net income or some similar base of taxation. 72 P.S. § 7701.4.

672.) The majority does not dispute this. However, the majority does not explain why, if the "Bank Shares Tax" is a tax on banks, liability for the tax depends on the status of the shareholder, **not** the bank. In my view, this shows clearly that the tax is on the shareholder.

### III. Case Law

### A. *Bowers*

In reaching its contrary conclusion, the majority relies on *Society for Savings in the City of Cleveland, Ohio v. Bowers,* 349 U.S. 143, 75 S.Ct. 607, 99 L.Ed. 950 (1955). However, I cannot agree that *Bowers* supports the majority's position. In that case, the United States Supreme Court stated that the true nature of a bank shares tax is determined by examining the rights and liabilities that the statute creates, and that, where a bank shares tax statute gives banks the right to recover the tax from shareholders, then the bank, in paying the tax, is acting only as a collection agent. *Id.*

Here, section 701 of the Act gives the banks the **right** to **collect** the "Bank Shares Tax" from shareholders.[3] It is true that the banks may choose to pay the tax from general funds, but the banks need not do so. In any given tax year, banks may choose to exercise their statutory right to collect the tax from shareholders. In my view, such an option relieves banks from ultimate liability for the "Bank Shares Tax."

### B. *Schuylkill I* and *Schuylkill II*

In *Schuylkill Trust Company v. Pennsylvania,* 296 U.S. 113, 56 S.Ct. 31, 80 L.Ed. 91 (1935) (*Schuylkill I*), and *Schuyl-*

*kill Trust Company v. Pennsylvania,* 302 U.S. 506, 58 S.Ct. 295, 82 L.Ed. 392 (1938) (*Schuylkill II*), the U.S. Supreme Court interpreted a 1907 Pennsylvania statute that imposed a tax on trust company shares.[4] The statute required trust companies to report to the Department of Revenue the number and value of outstanding shares. The Department of Revenue assessed the shares, and the company was required to "pay the tax from its general fund ... **or collect it from the shareholders** and pay it over." *Schuylkill II,* 302 U.S. at 508, 58 S.Ct. 295 (emphasis added). Thus, the 1907 statutory scheme was identical to that in section 701.

As we are asked to do in this case, the U.S. Supreme Court in *Schuylkill II* found it necessary to interpret the statute to determine whether the tax was imposed upon the shareholder or the company. The court stated:

> The statute **on its face** lays the tax upon the property of the **stock holder,** represented by the shares he owns. The state courts, and the local federal court, have held the imposition [of the] tax [to be] upon the shares. The history of legislation respecting taxation of banks and trust companies in Pennsylvania leads to the same conclusion. We are of opinion that the **tax is one upon the shares** as such and not upon the assets of the company.

*Id.* at 512–13, 58 S.Ct. 295 (footnotes omitted) (emphasis added).

Significantly, the U.S. Supreme Court noted that several decisions of the **Pennsylvania Supreme Court** interpret the statutory scheme as a tax on shareholders. *Id.* Section 1922(4) of the Statutory Con-

---

**3.** I am puzzled by the majority's statement that a bank "has no statutory right to recover the tax from [its] shareholders." (Majority op. at 673.) Section 701 states clearly that a bank may collect the "Bank Shares Tax" from its shareholders.

**4.** The statute in question was the Act of June 13, 1907, P.L. 640, as amended.

struction Act of 1972 provides that, when a court of last resort has construed the language used in a statute, it is presumed that the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language. 1 Pa.C.S. § 1922(4). Here, then, I must presume that the General Assembly intended the "Bank Shares Tax" described in section 701 to be a tax on shareholders.

## IV. Constitutionality

A state statute that undertakes to tax things wholly beyond the state's jurisdiction or control conflicts with the Fourteenth Amendment of the United States Constitution. *Safe Deposit and Trust Company v. Virginia*, 280 U.S. 83, 50 S.Ct. 59, 74 L.Ed. 180 (1929).

With respect to intangible property, in general, where the owner of intangibles confines his activity to the place of domicile, the intangibles are taxed at their *situs* and not elsewhere, i.e., it is the association of the intangibles with the person of their owner at his domicile that gives jurisdiction to tax. *Curry v. McCanless*, 307 U.S. 357, 59 S.Ct. 900, 83 L.Ed. 1339 (1939). However, in cases involving shares of stock, jurisdiction to tax is not necessarily restricted to the domiciliary state. *State Tax Commission of Utah v. Aldrich*, 316 U.S. 174, 62 S.Ct. 1008, 86 L.Ed. 1358 (1942); *Curry*. Another state which has extended benefits or protection with respect to the shares, or which can demonstrate the practical fact of its power or sovereignty with respect to the shares, may likewise constitutionally make its exaction. *Id.*

Here, there is nothing before this court to suggest that Pennsylvania has extended benefits or protection with respect to the bank shares of non-resident shareholders or that Pennsylvania might have power or sovereignty with respect to the shares. Thus, I would conclude that Pennsylvania may not constitutionally tax the bank shares of non-resident shareholders.

Accordingly, I would reverse.